IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Emilio Burton Craig, Sr., #319662, ) | CIVIL ACTION NO. 9:11-2090-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Director Mitch Stanley of ) | |
| Darlington County Detention ) | |
| Center, individually and in his ) | |
| official capacity, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was an inmate at the Darlington County Detention Center,[1] alleges violations of his constitutional rights by the named Defendant.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 3, 2012. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on January 4, 2012, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby ending his case.

---

[1] Plaintiff is currently incarcerated at the Kirkland Correctional Institution, a prison managed by the South Carolina Department of Corrections (SCDC). See Court Docket No. 13 [Change of Address Notice].

- 1 -



After receiving two (2) extensions of time, Plaintiff filed an "Affidavit" in opposition to the Defendant's motion on March 13, 2012. The Defendant's motion is now before the Court for disposition.[2]

### **Background and Evidence**

Plaintiff alleges in his Verified Complaint[3] that on July 3, 2011 he broke his arm in an accident at the Darlington County Detention Center. Plaintiff alleges that he was standing on a sink talking to another inmate through a vent when he fell and injured his arm. Plaintiff alleges that he told the nurse the following day about his accident and that the nurse told him it "just looked bruised to him" and gave Plaintiff some Ibuprofen for pain and swelling. Plaintiff alleges that he thereafter continued to be in "extreme pain" and that he could not lift his arm, so he requested to see the nurse again. Plaintiff alleges that this time he was seen by the head nurse, who sent him to McLeod Hospital for x-rays. Plaintiff alleges that he "assumed" he had a fracture of the distal ulna, and that the hospital told him he needed to have his arm set and a cast put on. Plaintiff alleges, however, that when he got back to the jail he was told that, due to the fact that he had been standing on a sink, he would have to pay for his own services.

Plaintiff alleges that he did not have the money at that time, but told jail officials that

---

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[3] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

- 2 -



they could bill him for it or take it out of his inmate account until the cost was paid off. Plaintiff alleges, however, that the Defendant Stanley, Director of the Detention Center, told Plaintiff that "it would heal itself". Plaintiff alleges that he told Stanley he did not want his arm to heal itself, but that when they called a doctor to get a price for having his arm set, the price was Two Hundred Fifty dollars, which he did not have. Plaintiff alleges they could have billed his inmate account for this amount, but that he is "still in the same position with a splint that the head nurse put on me three weeks ago", and that his arm is "still in pain and is healing incorrectly". Plaintiff seeks monetary damages, to include the cost of his surgery. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant has submitted an affidavit from the Diane Wilkes, who attests that she is employed by Hartsville Medical Enrichment Services, LLC (HMES), an independent contractor that provides medical services for the Darlington County Detention Center. Wilkes attests that on July 6, 2011, Plaintiff completed a sick call form and notified HMES that he had fallen and hurt is arm. A copy of the sick call request is attached to Wilkes' affidavit as Exhibit A. Wilkes attests that Plaintiff was seen by HMES and transported to the McLeod Medical Center for x-rays that same day. Wilkes attests that x-rays showed a "mildly displaced fracture of the distal ulna", and that a splint was placed on Plaintiff's arm. A copy of the radiology report from McLeod Medical Center showing this injury is attached to Wilkes affidavit as Exhibit B. Plaintiff was then returned to the Detention Center. Plaintiff was also informed that if he wished to see an orthopedic surgeon, the initial consultation would cost $250.00 and that he needed to discuss that with his family.

Wilkes attests that the physicians at McLeod did not indicate that Plaintiff needed any further treatment from a medical doctor such as an orthopedist. Rather, it was Plaintiff who inquired



about such. Wilkes attests that the splint was sufficient to treat Plaintiff's injury. Wilkes attests that Plaintiff thereafter had a number of visits during sick call and was treated by HMES, and that he was never denied any medical attention he required. Finally, Wilkes attests that Stanley does not provide medical care to individuals housed at DCDC, and that the medical care provided is provided by HMES. See generally, Wilkes Affidavit, with attached exhibits.

The Defendant Stanley has also provided an affidavit wherein he attests that he is the Director of the Darlington County Detention Center. Stanley attests that medical services provided at DCDC are provided by HMES as an independent contractor, and that although he knew about Plaintiff's self-inflicted injury and knew he was receiving treatment from HMES, he [Stanley] at no point undertook the duty to treat Plaintiff, as he is not a medical doctor. See generally, Stanley Affidavit.

In his affidavit filed in opposition to the Defendant's motion, Plaintiff attests that when he saw Wilkes on July 6, 2011 his left arm was severely swollen and Wilkes had to cut the identification band off of Plaintiff's left arm. Plaintiff further attests that Wilkes put his left arm in a splint and gave him a sling "before or upon his return" from McLeod Medical Center, and that when he saw relevant personnel at McLeod, they suggested an appointment with a orthopedist. Plaintiff attests that Wilkes asked him if anyone would assist him with the $250.00 charge or fee to see the orthopedist, and that Plaintiff informed Wilkes to call his mother and that Wilkes telephoned his mother in Plaintiff's presence. However, the Defendant failed to provide transportation to an orthopedist, saying the injury would heal or repair itself as Plaintiff could/would not provide the required $250.00 fee. See generally, Plaintiff's Affidavit.



**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

Although Plaintiff is no longer confined at the Darlington County Detention Center, his claim for monetary damages survives his release from the Detention Center. See Mawhinney v. Henderson, 542 F.2d 1, 3 (2d cir. 1976). Further, the Defendant is subject to suit for damages in his individual capacity in a § 1983 lawsuit. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186, 1187 (4th Cir. 1991). Liberally construed, Plaintiff is seeking damages against the Defendant in his



individual capacity. However, for the reasons set forth hereinbelow, the undersigned does not find that the evidence is sufficient to create a genuine issue of fact as to whether the Defendant violated Plaintiff's constitutional rights.

The Eighth Amendment is used to evaluate conditions of confinement for those convicted of crimes. However, since Plaintiff was a pre-trial detainee during the time period set forth in the complaint, his claims are evaluated under the due process clause of the Fourteenth Amendment; <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979); although for purposes of consideration of Plaintiff's claim, the standard of whether Plaintiff received constitutionally adequate medical care is essentially the same. See <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the 14th Amendment guarantees at least 8th Amendment protections]. Under this standard, in order to survive summary judgment and proceed with his claim for denial of adequate medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether the named Defendant was deliberately indifferent to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Farmer v. Brennen</u>, 511 U.S. 825, 837 (1994); <u>Sosebee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986); <u>Wester v. Jones</u>, 554 F.2d 1285 (4th Cir. 1977); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975); <u>Belcher v. Oliver</u>, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. Rather, the evidence shows that Plaintiff was seen by medical staff at the detention center on the same day he submitted his medical request, received medical attention, and was even sent to the hospital for x-rays. Plaintiff complains that thereafter the Defendant refused his request to be seen by an orthopedist because he did not have the money to pay for that service at that time. However, Plaintiff's claim (even assumed to be true for purposes of summary judgment) does not constitute evidence of a violation of Plaintiff's constitutional rights by this Defendant.



First, there is no evidence that the Defendant Stanley was involved in Plaintiff's medical care, or made any decisions about what type of care and treatment Plaintiff was to receive. See generally, Dahl v. Weber, 580 F.3d 730, 733 (8th Cir. 2009)[Prison warden may be liable under § 1983 only if the warden is personally involved in, or directly responsible for, the prisoner's plight]. The Defendant's evidence clearly shows that HMES is responsible for providing medical care to the prisoners at the jail, and that the medical decisions in this case were made by Wilkes, who saw and examined Plaintiff, and by the McLeod Hospital. Stanley cannot be found liable solely because, as Director of the Detention Center, he employed someone who violated Plaintiff's constitutional rights, even assuming such a constitutional violation in fact occurred. Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985)[Supervisory official may only be liable for actions of subordinates where subordinates' allegedly unconstitutional conduct was the result of an official policy or custom for which the supervisory official was responsible]; see Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977); see also Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)).

Even though the facts (construed most favorably to the Plaintiff) show that the Defendant was aware that Plaintiff was dissatisfied with his medical care and wanted to be seen by an orthopedist, there is no evidence whatsoever to show that the Defendant did anything other than rely on the medical personnel at the jail to provide and make decisions concerning Plaintiff's medical care, or that any medical care Plaintiff received was improper because of a custom or policy of the Defendant or that the Defendant had personal knowledge that any medical care being provided was



not proper. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]; see also Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. at 837.

In any event, there is no evidence before the Court to show that a constitutional violation even occurred. The Defendant has provided an affidavit from a medical professional who attests that Plaintiff was seen for his injury, was sent to the hospital, and that any further treatment other than a splint and pain medication was not medically required. Wilkes Affidavit, with attached exhibits. Plaintiff concedes in his own affidavit that he was seen and evaluated by Nurse Wilkes, and that he was also seen at the McLeod Medical Center. Plaintiff's Affidavit. While Plaintiff argues that he should have been sent to an orthopedist, he has submitted no medical evidence to show that Wilkes (who is not even a named Defendant in this action) was deliberately indifferent to his medical condition by providing the care and treatment shown in the evidence. Rather, Plaintiff's complaint is that medical personnel refused to provide him with the treatment he personally desired. Such allegations are not sufficient to allow this claim to proceed. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]. Plaintiff's personal opinion notwithstanding, nothing in the evidence and exhibits before the Court gives rise to a genuine issue of fact as to whether the Defendant, Wilkes, or anyone else was deliberately indifferent to Plaintiff's serious medical needs. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing



O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]).

While Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence other than his own subjective opinion, and expect to survive summary judgment, particularly when the Defendant has submitted documents and evidence from a medical professional which refute his claims. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"].

Plaintiff may, of course, pursue a claim in state court if he believes it was malpractice for the Detention Center not have sent him to an orthopedist, as he requested, and indeed the undersigned makes no finding as to whether a consultation with an orthopedist could possibly have been a better course of treatment. That, however, is not the issue before this Court. Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation



merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether the named Defendant was deliberately indifferent to his serious medical needs, the standard for a constitutional claim, and Plaintiff's federal § 1983 medical claim should therefore be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal]; Shakka, 71 F.3d at 167 [officials entitled to rely on judgment of medical personnel]; Miltier, 896 F.2d at 854 [officials entitled to rely on expertise of medical personnel].

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 20, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

